Deaderick, J.,
delivered the opinion of the Court.
In 1851, John W. Goode died, having made a last will and testament, leaving his property, real and personal, under the control of his widow, Pamelia W., and appointing her his sole executrix, with power to dispose of any of his property at her discretion, and reinvest the proceeds in other property. No security was required to be given for the faithful execution of the trusts of the will. The testator had real estate in Memphis and in Arkansas, a number of slaves, and debts due him at the time of his death. The testator also left surviving him, two daughters, Sallie L., wife of -complainant George T., and Mary, wife of William Harris, who, with their husbands, are the complainants in the bill; and two sons, the defendant William S. and Patrick Goode, who died after *60 the death of his father, intestate, unmarried and without issue. The widow, Pamelia, took upon herself the execution of the will, assisted by her brother, Calvin J. Clack, who, as her agent, hired the slaves, collected hire, and other debts due to the estate of the testator, which the bill alleges, he failed to pay over or account for. Mrs. Goode died in September, 1855, as alleged in the bill, and it is further charged that Calvin J. continued to manage the business of the estate of his deceased sister and of John W. Goode, up to 1864, when he died, and Spencer Clack afterwards administered upon his estate.
In 1866, complainant, George T., administered upon the estate of said John W. Goode, deceased, and subsequently took out letters of administration upon the estate of Mrs. Goode. Numerous parties defendant are made, including persons who hired slaves, and the bill seeks to hold them, liable for the hire, as well as to hold the estate of C. J. Clack, deceased, liable not only for such hire, but also for money and property alleged to have been received by him and for which he did not account. The bill was filed in September, 1866, in the Chancery Court at Somerville. The administrator of Calvin J. Clack answered, and admitted that his intestate, during the life of the executrix, assisted her in the settlement of her husband’s estate, and after her death, there being no administration on her estate or her husband’s, that said Calvin J., at the request of the children of said John W. Goode, who were his nephews and nieces, continued in charge of the estate, for the purpose of preserving and pro *61 tecting it, until he entered the army, in 1861. He denies that his intestate received large sums of money of said estates, but states that he paid out upon .the debts, and for the maintenance of the family of said John ~W. Goode, deceased, far more than he received; denies that he is liable for debts due for hire, that were lost by the casualties of war, or by the insolvency of the hirers. At the November Term, 1867, the Chancellor directed the master to take an áccount “ of all such moneys, property, or assets of the estate of John "W. Goode, deceased, as came to the hands of Calvin J. Clack in his lifetime, before the death of Pamelia ~W. Goode, deceased, and also after her death,” including in his account the use of property and hire of negroes. The master was also directed to take an account showing what assets of John W. Goode, dec’d, were received by any of the defendants to the bill, including the use of any of the negroes, and make his report to the next regular term thereafter, or if practicable, to any intermediate special term. At the May Term, 1868, the master having made no report, an order was made renewing the order of the preceding November Term, and the master was directed “to make his report to the next regular or special term/5 It will be observed that the two orders above recited, directing the master to report, confined his inquiries to the liabilities of the defendants, giving no authority to hear any evidence or make any report upon matters in discharge of such liabilities. In obedience to these orders, the master made his report to the June Special Term, 1868; to which report numerous exceptions were *62 filed, and upon argument of the exceptions the. report was recommitted to the master, “ with leave to either party to take other and further testimony as to debits and credits. No report having been made at the November Term, 1868, a further order appears, directing “that the order made at last term of this court for an account, be in all things revived and renewed.” No other order or decree was made in the cause at the November Term, 1868, or May Term, 1869, or other steps taken therein; but it stood over to the special August Term, 1869, at which time exceptions were filed to the report, which. is dated and marked “ filed May 1, 1869.” This account and report embraces about thirty pages of record, each page containing numerous charges, briefly stated, against some of the twenty-seven defendants to the bill, and with the exception of an occasional. reference to an answer of a defendant, it cites no one of the numerous depositions nor any of the pleadings or other evidence to sustain the charges.
When .the master states a fact or result which he has been directed to ascertain and report, he should briefly cite or refer to the evidence upon which he predicates his report. This is/ especially necessary in stating an account where the items constituting it are numerous and the evidence voluminous. Application was made “ to reopen the account and report of the clerk and master and to retake proof,” which was refused by the court; but the administrator of Calvin J. Clack was allowed to file an amended answer, which was accordingly done; and in said amended answer *63 amongst other defeases made, the statute of limitations was, for the first time, pleaded and relied upon.
The administrator of Calvin J. Clack in support of his application to reopen the account and allow the taking of further proof, offered and read his affidavit, which is made part of the record by bill of exceptions. Affiant states, that his intestate is not indebted to Goode's estate; and, that he had no notice or opportunity to cross-examine the witnesses on whose testimony he is charged; that in the winter preceding the taking of the account taken, May, 1869, he caused notice to be issued to be served upon the proper parties to take the depositions of fifteen to twenty witnesses by whom he would have proved the payment of large sums of money for the maintenance and education of the children of Goode, and other material facts in his defence; that by a failure of the mails or other cause, the notices were not returned until after the expiration of the time fixed for the taking of the depositions: that soon after this, martial law was declared in the county of Giles, where most of the witnesses resided, and legal proceedings were suspended, and the people were in terror and confusion on account of the threatening conduct of the militia; and, that a proposition to compromise the suit had been made, and complainant still was expected in Giles county to negotiate the same. The names and residences of the witnesses are given and the facts to be proved by them severally, are stated. It is further stated in the affidavit, that since the taking of the account in May, 1869, affiant has ascertained *64 that he can prove by two witnesses, whose names are given, the admission of Mrs. Goode that she was indebted to the said Calvin J., and in substance, that he had advanced for herself and family more than he had received from the estate of her husband. The Chancellor refused to reopen the account or allow defendants to take any further testimony, and confirmed the master's report rendering a decree severally against defendant, ' Spencer Clack as administrator of C. J. Clack, and others, defendants in the cause for the claims, from which decree all of the defendants have appealed to this court.
For defendants it is insisted the decree upon the account is erroneous, because in the reference order, no question is adjudicated, and proper directions were not given to the master as the basis of his account and report.
The first order of reference which was rendered at May term, 1868, was undoubtedly defective, directing simply that the master should take an account to charge the defendants, giving them no authority to hear proof of or report any matter in discharge of any liability which might be ascertained by the account to exist against them, and the rep’ort was properly set aside upon exception. The master, up to June term, 1868, had no authority in making his report to take notice of any evidence which might have been taken by the defendants, in exoneration of the liability he was directed to report against them. At this term, for the first time, an order was made directing the master 'to - hear proof as to debits and *65 credits. This order, though not specific, as it should have been, we think sufficient to authorize the master to hear testimony and report upon any matter of de-fence, which would constitute a set-off against the claims of the complainants, and there was in the pleadings and proof sufficient evidence to authorize the Chancellor to order the account. No account was taken until May, 1869; why it was not taken and reported to November term preceding, does not appear. At the taking of that account in May, 1869, defendants were entitled to introduce witnesses and have them examined, or to take their depositions elsewhere in time to avail themselves of the evidence upon the taking of the account. The defendants applied for leave to take certain depositions, which they had been prevented from taking, as stated in the affidavit of Spencer Clack, adminstrator, and to have the account reopened. This was refused, but, said Clack, administrator, was allowed by the court to file an amended answer relying upon and setting up a new defence, -to which action of the court in allowing answer to be filed, complainants excepted. The Chancellor, notwithstanding he had allowed an amended answer to be filed, raising a new issue, without allowing time or opportunity to take proof on such issue, rendered a final decree, at the same term confirming the report of the master and ignoring the issue made by the amended answer. If it was proper to allow the defendants to put in an amended answer at that time, it would certainly have been proper to hear proof upon the new issue presented.
*66 The amendment of Chancery pleadings is always allowed with great liberality, but after the examination of witnesses and publication passed, the' pleadings cannot be altered or added to, but under very special circumstances, or in consequence of some subsequent event. 9 Yer., 295, Dan., Ch., Pr., 780. This court is reluctant to control the inferior courts in the exercise of discretion in matters of practice, but it would be productive of most mischievous consequences to allow such amendment where only a legal defence is set up. The amended answer in this case relies upon no defence which could not be made under the original answer, except the plea of the statute of limitations.
The only remaining questions to be determined, are, has the decree attained the justice of the case, and did the Chancellor properly exercise his discretionary power in refusing to reopen the case for further testimony. The decree against the estate of Calvin J. Clack, is for upwards of $13,000. There is in the record evidence of facts which satisfy us that he is entitled to large credits upon this sum. Yet the report gives him no credit at all. We do not feel satisfied from the evidence, of the correctness of the decree against Calvin J. or Spencer Clack’s estate, and upon the strong facts presented in the affidavit of Clack, we think the chancellor erred in refusing to allow the account to be reopened and further testimony to be taken. Wé think there has not been such gross negligence on the part of defendants as to deprive them of the privilege of taking testimony to *67 show what credits they are entitled to, as against the sum reported against them.
The decree in this case will be reversed, and, as the liability of the defendants, who are charged as hirers of the slaves, will depend upon, or may be affected by the state of C. J. Clack’s account, the case will be remanded for a further account between all the parties.
The costs in this court will be paid one-half by complainants, and the other half by defendants.